IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD L. NEWTON,

        Plaintiff,

  v.

JOANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

Civil No. 04-1205-AS

FINDINGS AND RECOMMENDATION

    MERRILL L. SCHNEIDER
    Schneider Law Offices
    14415 S.E. Stark St.
    Portland, OR  97233

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    CRAIG J. CASEY
    Assistant United States Attorney
    1000 S.W. Third Ave., Suite 600
    Portland, OR  97204

```
          STEPHANIE R. MARTZ
          Special Assistant United States Attorney
          Office of General Counsel
          Social Security Administration
          701 5th Avenue, Suite 2900 M/S 901
          Seattle, WA  98104
```

          Attorneys for Defendant

ASHMANSKAS, Magistrate Judge.

Plaintiff Edward L. Newton ("Newton") filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. §405(g), to review the final decision of the Commissioner of Social Security (the "Commissioner") who denied him social security disability insurance benefits ("Benefits") and supplemental security income ("SSI").

## PROCEDURE

On or about January 11, 2002, Newton filed an application for Benefits alleging an onset date of November 8, 1994.[1] The application was denied initially, on reconsideration, and by the ALJ after a hearing. The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner.

---

[1] At the hearing before the Administrative Law Judge ("ALJ"), on January 13, 2003, Newton amended his alleged onset date to August 31, 1999.

2 - FINDINGS AND RECOMMENDATION -

## **FACTS**

Newton is 57 years old. He completed the equivalency of a high school education by earning his General Equivalency Diploma and took professional cooking classes. His past relevant work experience includes auto detailer, pool/spa service worker, landscape worker, motel cleaner, convenience store cashier, livestock yard worker, warehouse worker, and cook. Newton alleges disability because of spinal degenerative disc disease with low back and neck pain, depression, post-traumatic stress disorder ("PTSD"), diabetes, epilepsy, hypertension, and hepatitis C.[2] Newton last met the insured status requirements entitling him to Benefits on September 30, 1999.

**I. Testimony**

Newton is a Vietnam veteran. He served with the 705th maintenance battalion as an aircraft mechanic. Newton supervised the repairs of aircraft and was involved in recovery of some of the aircraft in the field where there was enemy fire. Newton was also exposed to Agent Orange.

In 1975, Newton applied for service connection disability benefits with the Veterans Administration ("VA"). His application, which was based upon PTSD and several other

---

[2] The ALJ found Newton's diabetes, epilepsy, hypertension, and hepatitis C were not serious impairments. Newton does not dispute these findings in this action, so the remaining issues concern Newton's back and neck pain, depression, and PTSD.

3 - FINDINGS AND RECOMMENDATION -

illnesses, was denied.  He later reapplied, and in October 2002, the VA granted Newton 20 percent disability for diabetes, 50 percent non-service disability for PTSD, and 40 percent non-service connected disability for lower back and degenerative arthritis.

Newton was convicted of robbery, and on June 26, 1996, was sentenced to five years and ten months of imprisonment.  While in prison, he completed professional cooking classes and worked as a sous chef in a supervisory capacity.  Newton was release from prison on December 31, 2001.

Newton suffers from pain that starts in his neck, goes to his low back, and travels through his legs.  He has also has "several spasm attacks" that at least once required an injection of pain medication to stop the spasms.  At his doctors' advice, he sits no more than an hour at a time, and then walks around for 25 to 30 minutes "to kind of relax the muscles a bit before I continue." Newton thinks he could stand and walk about an hour, and does not think this has changed since 1999.  While he did receive training in prison to be a cook, he "was like a supervisor so I just -- I could take the breaks that I needed as the doctor recommended," and never had to stand more than one hour at a time.  Newton finds he must lie down for half an hour twice a day, once in the morning and once in the afternoon, to relax his back muscles and also because his multiple medications cause him to be fatigued.

Newton has been diagnosed with PTSD, which causes him to experience nightmares, night sweats, and "hallucinations" since his time in the service. Newton explained his hallucinations:

> I, I kind of remember stuff that went on while I was over there in Vietnam and then some of the things that, that has traumatized me since, since being in the war and watching, watching and reading about other wars and stuff. It kind of brings back the same, same kind of memories I've had and I have a lot of problems with.

Newton also suffers from depression, for which he takes medications and receives counseling. Newton thinks the combination of his PTSD and depression causes him "a lot of distress" and makes him "keep pretty much to myself now[.]" He has less motivation now, too, and is no longer "real gun hoe [sic] and motivated" to engage in and enjoy activities like he used to be.

Newton has epilepsy. He has had three *grand mal* seizures. Newton takes daily medication for his epilepsy, and his doctors have told him to avoid any type of hazardous work.

**II. Medical Evidence**

Newton has suffered back pain for a number of years. It became noticeably worse in 1994, when he hurt his back at work while hitching up a trailer. Diagnostic imaging in November 1994 revealed minimal disc bulge at L5-S1, leading to a diagnosis of musculoskeletal back pain. An x-ray dated January 31, 2002, showed mild lumbar degenerative changes and minimal L5

spondylolisthesis (forward slippage of a vertebra on the vertebra below it). An April 2004 MRI showed severe foraminal stenosis bilaterally at L5-S1 with evidence of S1 radiculopathy. Medical records refer to daily pain complaints that allegedly increase with any activity. Examinations have shown a restriction in Newton's lumbar range of motion and in 2002, Newton's treating physician opined Newton's spinal range of motion would be decreased by another 20% during periodic muscle spasms and flares of pain.

Newton broke his right ankle in May 2001. Since then, he has suffered recurrent edema in that ankle, and his treating physician reported that Newton needed to elevate that leg as much as possible. Newton also began experiencing edema in his left leg and both arms and hands.

Newton has been diagnosed as suffering from PTSD as a result of his time in Vietnam. He also has been diagnosed and treated for depression for a number of years. In a March 2002 evaluation, Duane Kolilis, Ph.D., questioned the appropriateness of the PTSD and depression diagnoses:

> As far as a Posttraumatic Stress Disorder, there are no records available to support his claim. The etiology of his alleged PTSD is unclear. He did not face combat, and his attribution of PTSD from Agent Orange is not credible. He does not present with the symptoms necessary for this diagnosis. He was calm and relaxed during the interview today. . . . There is not sufficient evidence of psychopathology, outside of drug

abuse, that is severe enough to limit his capacity to function independently.

James Powell, Psy. D., a consultative examiner, reached a similar conclusion following an April 2002 examination of Newton. Dr. Powell stated:

> [I]t does not appear that the PTSD symptoms or symptoms of depression were at such a level of severity that they prevented him from maintaining employment, and there does not appear to be any evidence of his having difficulty from maintaining employment in the past due to concentration or memory difficulties.

### III. Vocational Evidence

Jenipher Gaffney attended the hearing as a vocational expert. She identified Newton's past relevant work as lot attendant/vehicle detailer, an unskilled position at the medium exertional level; pool and spa servicer, semiskilled and medium; yard work/landscaper, unskilled and heavy; motel room cleaner, unskilled and light; convenience store cashier, also unskilled and light; livestock yard attendant, unskilled and heavy; and a brief position as a warehouse worker, unskilled and medium.

The ALJ posed the following hypothetical:

> Please assume a worker 51 years of age, please assume that this worker has the same educational and vocational background as Mr. Newton. Please assume that this worker should, should not be exposed to any work with [sic] requiring the use of ropes, ladders or scaffolds. Worker can lift 20 pounds occasionally, 10 pounds frequently. Can sit, stand or walk for one hour at a time for any of those activities. No overall limit. Given that hypothetical, would that hypothetical worker be able to perform any of the past work you identified for Mr. Newton?

Ms. Gaffney testified that, based on those limitations, Newton could perform his past relevant work as a room cleaner or cashier. When the ALJ included the additional restriction of no exposure to hazards, Ms. Gaffney opined that would eliminate the room cleaning position, but not cashiering.

The additional restriction of simple, routine, repetitive work would also would not eliminate cashiering. The additional restriction of limited interaction with the public or with co-workers would, however, eliminate cashiering in Ms. Gaffney's opinion. Ms. Gaffney also opined Newton could work in certain types of assembly, garment sorting, or office help.

Newton's attorney posited additional limitations on the hypothetical. If faced with a worker who's large number of medications make the worker fatigued and drowsy such that concentration and ability to perform tasks in a timely manner is reduced by 50 percent, Ms. Gaffney opined Newton's ability to keep any of the jobs discussed would be impaired.

Finally, Newton's attorney added restrictions to the ALJ's hypothetical that the worker could lift only 10 pounds, and the worker must lie down to rest for thirty minutes each morning and afternoon. Ms. Gaffney opined these additional restrictions would not be consistent with competitive employment.

**IV. ALJ Decision**

The ALJ found Newton had performed no substantial gainful activity since his alleged onset date. The ALJ then determined Newton had the severe impairment of degenerative disc disease, but that this impairment neither met nor equaled any impairment in the Listing of Impairments. The ALJ found Newton failed to establish any other impairment as a severe impairment.

The ALJ also found Newton retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally or 10 pounds frequently, and sit, stand or walk one hour at a time, but never climb ladders, ropes or scaffolds. Based upon these findings, the ALJ determined Newton retained the ability to perform his past relevant work as a cashier.

In reaching his conclusion, the ALJ discredited Newton's testimony regarding his physical limitations. The ALJ found objective medical findings did not support the degree of restriction alleged by Newton. With respect to Newton's emphasis on the need for naps and alleged concentration problems, the ALJ found these problems allegedly existed while Newton was in prison, yet he was able to successfully perform work as a short order cook.

## **STANDARD OF REVIEW**

The Social Security Act (the Act) provides for payment of disability insurance benefits (DIB) to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, Supplemental Security Income benefits (SSI) may be available to individuals who are age sixty-five or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 518 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2) (A) and 1382c(a)(3)(B).

10 - FINDINGS AND RECOMMENDATION -

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI because he or she is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI). The claimant is entitled to disability benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Drouin, 966 F.2d at 1257. It is more than a scintilla, but less than a preponderance, of the evidence. Id.;

Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Gonzalez, 914 F.2d at 1200. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Gomez, 74 F.3d at 970.

## DISCUSSION

Newton argues the ALJ's decision was neither supported by substantial evidence nor free from legal error for four reasons: (1) the ALJ improperly rejected Newton's testimony; (2) the ALJ erroneously found Newton's mental impairments non-severe; (3) the ALJ ignored the opinion of treating physician Piotr Kuklinski, M.D.; and (4) the ALJ's hypothetical was deficient.

**I. Newton's Testimony**

Where a claimant has provided objective evidence of impairments that could cause some level of the symptom alleged and the record contains no affirmative evidence of malingering, the ALJ is required to give clear and convincing reasons to reject that claimant's testimony. Dodrill v. Shalala, 12 F.3d 915, 918

(9th Cir. 1993). When making a credibility determination, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) medical evidence tending to discount the severity of subjective claims. See Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); see also Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ found much of Newton's testimony concerning his subjective complaints and alleged limitations was not convincing. Specifically, he found objective medical findings do not support the degree of restriction alleged by Newton, and that observations of Newton by Dr. Kolilis led to challenges concerning his credibility. Moreover, the ALJ found the emphasis placed by Newton and his attorney on Newton's need for naps and his alleged concentration problems was not supported by the evidence. The ALJ gave clear and convincing reasons for discounting Newton's testimony, and substantial evidence supported his decision.

**II. Mental Impairments**

The ALJ found Newton's depression and PTSD were non-severe impairments. He based this determination on evaluations performed by Dr. Kolilis and Dr. Powell. As the ALJ noted, Dr. Kolilis did not see any mental impairment, whether depression or PTSD, as imposing restrictions on Newton's ability to perform basic work-related activities.

A similar conclusion was reached by Dr. Powell, who stated:

> [I]t does not appear that the PTSD symptoms or symptoms of depression were at such a level of severity that they prevented him from maintaining employment, and there does not appear to be any evidence of his having difficulty from maintaining employment in the past due to concentration or memory difficulties.

Dr. Powell opined that while Newton's age and length of time away from employment due to his imprisonment hindered his ability to be re-employed, ". . . there does not appear to be any primary psychological condition at such a level of severity that would prevent him from continuing in the previous patterns of employment that he has identified, which often involved his working for at least a year in one setting."

Newton refers to extensive medical records to refute the ALJ's finding that Newton's PTSD and depression were not severe impairments. These records, however, while supporting Newton's claim he had been diagnosed with PTSD and depression, do not support how PTSD and depression affect Newton's ability to perform

15 - FINDINGS AND RECOMMENDATION -

work-related activities. In fact, the records suggest both the depression and PTSD are well-stabilized with medications. Accordingly, the ALJ's determination that Newton's depression and PTSD were not severe impairments is legally and factually sound.

**III. Treating Physician's Opinion**

Normally, the opinion of a treating physician is given great, even controlling, weight, because "the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993). However, the ALJ need not accept a treating physician opinion that is brief, conclusory, and unsupported by clinical findings. Tonaptyan, 242 F.3d at 1149 (citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)). The ALJ must give "clear and convincing reasons" for rejecting the uncontroverted opinion of a treating physician and "specific, legitimate reasons" for rejecting a controverted opinion of a treating physician. Magallanes, 881 F.2d at 751; see also Lester, 81 F.3d at 830-32.

Newton contends the ALJ ignored his treating physician's opinion that Newton needed to elevate his right leg as often as possible in order to reduce swelling. However, the ALJ noted that Newton reported that his legs swell if he stands for more than one hour, and the ALJ accounted for this in determining Newton's RFC where he limited Newton from standing for more than one hour at a time.

16 - FINDINGS AND RECOMMENDATION -

**IV. Hypothetical**

A vocational hypothetical that omits relevant and credible limitations is erroneous, and any vocational testimony derived from the deficient hypothetical lacks evidentiary value. Embry v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988). Reliance on such testimony is error. Id.

Newton contends the hypothetical posed by the ALJ failed to account for Newton's depression, fatigue, need to lie down, and need to elevate his legs. As noted above, however, the ALJ properly rejected the evidence upon which this claim is based. The ALJ's decision that Newton could return to post work based upon this hypothetical was supported by substantial evidence and free from legal error.

## RECOMMENDATION

The Commissioner's findings on Newton's disabilities, considering the record as a whole, are supported by substantial evidence. The decision of the Commissioner should be affirmed.

## SCHEDULING ORDER

Objections to these Findings and Recommendation(s), if any, are due June 27, 2005. If no objections are filed, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than July 13, 2005. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

DATED this  9th  day of June, 2005.

       /s/ Donald C. Ashmanskas
         Donald C. Ashmanskas
         United States Magistrate Judge